UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Star Tribune Company,  Civil No. 05-0843 (PAM/RLE)

          Plaintiff,

v.  **MEMORANDUM AND ORDER**

Minnesota Newspaper Guild
Typographical Union,

          Defendant.

---

This matter is before the Court on Plaintiff Star Tribune Company's Motion to Vacate Arbitration Award and Defendant Minnesota Newspaper Guild Typographical Union's Motion to Confirm Arbitration Award. For the reasons that follow, the Court grants Defendant's Motion and denies Plaintiff's Motion.

**BACKGROUND**

This case arises out of a grievance filed by Defendant Minnesota Newspaper Guild Typographical Union ("Guild") contesting the publication by Plaintiff Star Tribune Company ("Star Tribune") of freelance expert articles in Sections A and B of the Star Tribune newspaper. The Star Tribune and the Guild are parties to a collective bargaining agreement ("CBA") which permits the Star Tribune to employ freelance writers for ten categories of material. Otherwise, the Star Tribune must use Guild-represented reporters.

The Preamble to the CBA states:

> The Publisher recognizes the Guild as the duly authorized collective bargaining agent for said employees. The jurisdiction of the Guild is defined as all work presently being performed for the Publisher by the employees covered by this Agreement, and the performance of such work shall be assigned to employees

> within the Guild's jurisdiction. It is the intent of the parties that this Agreement shall not alter the jurisdiction of the Guild as established by present practice.

(July 25, 2005 McBroom Aff. Ex. B at 1.) Article XXIV(1)(d) of the CBA allows the Star Tribune to use freelance materials which are not produced by Guild-represented employees but are "[p]roduced by experts or specialists whose principal support or reputation is derived from other than regular newspaper employment." (Id. at 39.)

Paul Douglas, a local meteorologist, writes a daily weather column that is published in the B Section of the Star Tribune. In 2004, Douglas wrote five additional pieces that appeared in either the A or B Sections of the newspaper. The Guild filed a grievance claiming that the publication of the five Douglas articles violated the terms of the CBA. The Guild argued that the CBA prohibited non-staff expert pieces from publication in Sections A and B of the Star Tribune. The Guild did not contest the daily publication of Douglas's weather forecast.

The Star Tribune denied the grievance, and the dispute went to arbitration before Arbitrator James A. Lundberg ("Arbitrator"). The Star Tribune framed the issue as "[w]hether the Company violated the Agreement by its use in the Star Tribune Newspaper of five freelance articles by weather expert Paul Douglas." (July 25, 2005 McBroom Aff. Ex. D at 2.) The Guild stated the issue as whether "the Company violate[d] paragraph 2, of the Preamble Article of the Parties' Collective Bargaining Agreement, which describes the work jurisdiction of Guild represented employees, when it had a non-Guild freelance weather expert prepare news stories and published them in the A and B sections of the newspaper." (Id.) The Arbitrator found in favor of the Guild, concluding that for the last fourteen years, the only freelance

2

expert articles appearing in Sections A or B were the five articles written by Douglas in 2004. (Id. at 7.) In contrast, during that fourteen year period, over 4,000 freelance expert articles were published in sections other than A and B. (Id. at 5.) The Arbitrator concluded that the "present practice" of the Star Tribune was to publish freelance expert materials in sections other than A or B, with the exception of the weather page. (Id. at 7-8.) In formulating his conclusion, the Arbitrator reconciled the language of the Preamble with that of Article XXIV(1)(d). (Id. at 8.) The Arbitrator instructed the parties "to follow the present practice of not using freelance expert news articles" in the A or B Sections of the newspaper, excepting the weather page. (Id.)

**DISCUSSION**

    **A.**    **Standard of Review**

The Court's review of the Arbitrator's final decision is extremely narrow. Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 746 (8th Cir. 2000). The award must be confirmed if it "draws its essence" from the CBA. United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960). Indeed, "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." Id. at 599. Thus, "as long as the arbitrator is even arguably construing or applying the contract," the Court cannot overturn the award even if "convinced [the arbitrator] committed serious error." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

    **B.**    **The Interplay of the Preamble and Article XXIV(1)(d)**

3

The Star Tribune contends that the Arbitrator disregarded the plain and unambiguous language of Article XXIV(1)(d). However, Article XXIV(1)(d) must not be viewed in isolation. The Arbitrator was obliged to consider the CBA as a whole and interpret its provisions in the context of the entire agreement. Sheet Metal Workers Int'l Ass'n v. Lozier Corp., 255 F.3d 549, 551 (8th Cir. 2001) (quotations and citations omitted). An arbitrator may look to a CBA's jurisdictional statement in conjunction with other applicable provisions. Minneapolis-St. Paul Mailers Union v. Nw. Publ'ns, Inc., 379 F.3d 502, 504, 506-07 (8th Cir. 2004). Accordingly, the Arbitrator properly considered the language in the Preamble on which the Guild relies. This is especially true considering that the Guild framed the issue for arbitration as the effect of its jurisdiction over work published in the A and B Sections of the newspaper.

The Star Tribune also briefly faults the Arbitrator's decision on the grounds that the Guild does not have jurisdiction over expert freelance articles, and thus, the Preamble does not operate to permit the Guild's challenge to Article XXIV(1)(d) material. However, the Arbitrator did not apply the jurisdictional clause directly and solely to freelance expert material. The Preamble establishes the jurisdiction of the Guild over all work being presently performed for the Star Tribune by Guild-represented employees. From the time the CBA was executed until the present, all articles published in Sections A and B were written by Guild-represented employees except for the five Douglas articles in 2004. Consequently, the Guild's jurisdiction was established over work published in Sections A and B, which in turn

permitted the Guild to challenge the placement of freelance expert material in those sections. The Arbitrator was entitled to consider the Preamble in construing the CBA.

### C. The Star Tribune's "Present Practice"

The CBA provides that the scope of the Guild's jurisdiction is to be measured by the Star Tribune's "present practice." The CBA does not define the term "present practice." To reconcile the Preamble's jurisdictional language with Article XXIV(1)(d), the Arbitrator had to determine the present practice of the newspaper with respect to freelance expert articles. An Arbitrator must harmonize possibly incongruous provisions of an agreement. Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, 284 F.3d 821, 825 (8th Cir. 2002).

To determine the Star Tribune's present practice of placing freelance articles, the Arbitrator looked at evidence submitted by both parties.[1] An arbitrator "may look to sources other than the collective bargaining agreement . . . to aid in his interpretation" of the agreement. Keebler Co. v. Milk Drivers & Dairy Employees Union, 80 F.3d 284, 288 (8th Cir. 1996) (citing Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., 627 F.2d 853, 857 (8th Cir. 1980)). Specifically, an arbitrator may look at "past prevailing practices." Iowa Beef Processors, Inc., 627 F.2d at 857 (citations omitted). The evidence submitted to the Arbitrator in this case consisted of articles written by freelance experts and published in the Star Tribune over the past fourteen years. The Star Tribune had

---

[1] Not only did the Star Tribune not oppose the use of the Guild's parol evidence during the arbitration, but it also submitted its own parol evidence to the Arbitrator for his consideration.

always published a weather page on the back page of Section B; thus, this use of freelance material was clearly within the Star Tribune's present practice.[2] However, except for the five articles authored by Douglas, no other freelance expert material was published in either Section A or Section B of the newspaper. From this, the Arbitrator determined that the present practice of the Star Tribune was not to publish freelance expert articles in Sections A or B. By publishing the five Douglas articles in 2004, the Arbitrator concluded that Star Tribune violated the CBA. In sum, the Arbitrator properly looked at extrinsic evidence to harmonize the Preamble with Article XXIV(1)(d) and determine the Star Tribune's present practice with respect to placing freelance expert articles.

The Star Tribune relies heavily on Northwest Airlines, Inc. v. International Association of Machinists for its holding that an arbitration award must be vacated when an arbitrator ignores the plain language of an agreement. 894 F.2d 998, 1000 (8th Cir. 1990). Unlike the present case, the agreement in Northwest Airlines was a settlement agreement, not a CBA. Id. at 998-99. The settlement agreement between the airline and its former employee, Michael Nelson, required Nelson to obtain a valid driver's license before his employment would be reinstated. Id. at 998. Northwest Airlines is distinguishable on several grounds. First, the arbitrator was interpreting a settlement agreement, not a CBA. Second, the provision in the settlement agreement was patently clear, and there were no additional provisions in the agreement that created an ambiguity when read with the reinstatement provision. Third, the

---

[2] Conceding the historical exception of the weather page, the Guild did not challenge this use of freelance material before the Arbitrator.

airline's past or present practices were not at issue and were not considered by the arbitrator. Northwest Airlines is simply not applicable to the case at hand.

The need for evidence of the Star Tribune's present practice was not solely established by the tension created by the Preamble and Article XXIV(1)(d). The CBA itself anticipates that extraneous evidence would be necessary to define the term "present practice." See Trailways Lines, Inc. v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1423 (8th Cir. 1986) (where the CBA provided that the company should enjoy all "past practices," finding that the arbitrator erred by not considering evidence of such practices); Franklin Elec. Co. v. Int'l Union, United Auto. Aerospace & Agric. Workers, 886 F.2d 188, 193 (8th Cir. 1989) (upholding the arbitrator's reliance on evidence of past practices where the CBA expressly contemplated such use). Accordingly, the Arbitrator was obligated under the CBA to look at the Star Tribune's practice of placing freelance expert material.

**D.     No Nullification or Impermissible Amendment of the CBA**

The Star Tribune next submits that the Arbitrator's interpretation of the CBA nullifies its right to use freelance expert material under Article XXIV(1)(d). An arbitrator may not interpret a contract so as to nullify a provision. Int'l Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir. 2000). Here, the Arbitrator's interpretation of the contract merely limits the Star Tribune from placing freelance expert articles in Sections A and B. Other than the five articles written by Douglas, this was the Star Tribune's practice for fourteen years. During that fourteen year period, the Star Tribune published over 4,000 articles written by freelance experts in other sections of the newspaper. The Star Tribune may continue to place freelance expert material in other sections of the newspaper, thereby giving effect to Article XXIV(1)(d). In contrast, the arbitration award in International Paper was essentially a "blanket injunction" which completely eviscerated a right contained in the CBA. Id. at 818 n.1. International Paper is not controlling on these distinctive facts.

Similarly, the Star Tribune contends that the Arbitrator impermissibly modified the CBA, citing at length Excel Corp. v. United Food Workers International Union, 102 F.3d 1464 (8th Cir. 1996). Excel is distinguishable from the case at hand in several respects. First, the Eighth Circuit determined that the arbitrator's reliance on parol evidence was inappropriate because the language of the CBA was clear and unambiguous. Id. at 1468. Here, on the other hand, the Arbitrator properly examined evidence of the Star Tribune's present practices to resolve an ambiguity created by two contractual provisions. Second, there is no indication that the CBA in Excel expressly contemplated the use of extrinsic evidence to determine the

company's past or present practices, id. at 1466-67, as does the CBA in this case. Third, the factual findings of the arbitrator in Excel directly contradicted his ultimate ruling, id. at 1469, a circumstance dispositive to the Eighth Circuit's ruling but not present here.

**CONCLUSION**

If the Court were to look at Article XXIV(1)(d) in isolation, it would be clear that the Star Tribune could publish freelance expert articles without restraint. Indeed, as the Guild noted at the hearing, the entire newspaper could consist of only freelance expert material. However, the Arbitrator was obligated to consider the CBA as a whole. The Preamble establishes the Guild's jurisdiction over all work presently being performed for the Star Tribune by Guild-represented employees. To reconcile the Preamble with Article XXIV(1)(d), the Arbitrator had to determine the present practice of the Star Tribune with respect to placement of freelance expert articles. This determination could be made only by examining evidence of the Star Tribune's practice, which showed that the newspaper did not place freelance expert articles in Sections A and B. In light of the Court's obligation to defer to the Arbitrator, and finding that the award "draws its essence" from the CBA, the arbitration award is confirmed.

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court confirms the Arbitrator's award. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Vacate Arbitration Award (Doc. No. 10) is **DENIED**; and

2. Defendant's Motion to Confirm Arbitration Award (Doc. No. 17) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 27, 2005

                                                s/ Paul A. Magnuson  
                                                Paul A. Magnuson  
                                                United States District Court Judge